## No. 1155.

### FRIEDMAN BROTHERS vs. JOSHUA LEMLE—J. LEMLE, INTERVENOR.

Where a third person appeals suspensively from a judgment making peremptory a mandamus directing the sheriff to accept a bond which has been tendered for release of property attached and to release the attachments, and where the condition of the appeal bond is "to satisfy whatever judgment may be rendered against the *appellant,*" the obligations of the bond are restricted to the condition so expressed and, on failure to prosecute the appeal, cannot be extended to embrace an obligation to satisfy the judgment which had been rendered against the sheriff, or to pay general damages occasioned by the appeal.

Nor can the principal be held for damages outside of the terms of the bond, without proof of malice and want of probable cause. His position is similar to that of the original prosecutor of a civil suit, except in so far as the law has made a distinction between them in the requirement of bond.

APPEAL from the Fifth District Court, Parish of Ouachita. *Richardson,* J.

*Millsaps & Sholars* and *A. Golthwaite* for Plaintiffs and Appellees:

*C. J. & J. S. Boatner* for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J. Plaintiffs, as creditors of Joshua Lemle individually, sued him and attached his stock of goods. Various other creditors levied similar attachments.

A firm, styling itself J. Lemle, and alleging itself to be composed of Joshua and Julius Lemle, intervened in the proceedings and claiming ownership of the goods, applied for and obtained an order of court permitting it to release the same on bond. The firm thereupon tendered to the sheriff a bond in the sum of $19,974.50 conditioned according to law and with sureties which, however, the sheriff refused to accept. The firm then applied to the court for a writ of mandamus on the sheriff to compel him to accept the bond and release the property. After due proceedings, the mandamus was made peremptory.

The plaintiffs, together with several other attaching creditors, thereupon presented a joint petition representing that, though not parties to the mandamus proceeding, they had an appealable interest therein, and praying to be allowed a suspensive appeal from said judgment which was granted, returnable to this Court in June, 1885, upon their executing a bond for a suspensive appeal conditioned according to law, in the sum of twenty thousand dollars. The bond was executed in January, 1885.

It appears that *prior* to the application of J. Lemle to bond, certain of the creditors, *not including plaintiffs,* had applied for and obtained an order for the sale of the goods as being perishable, and J. Lemle hav-

ing failed to release on bond owing to the suspensive appeal in the mandamus proceeding, said order went to execution and the goods were sold. It does not appear that J. Lemle made the slightest opposition to the execution of this order though, under the peculiar circumstances, they might, perhaps, have successfully done so, until their timely application to release on bond had been finally determined.

However, the goods having been sold long prior to the return day of the appeal from the mandamus judgment, of course the marrow was taken out of that controversy and the appeal was abandoned.

Although plaintiffs' suit was filed on December 12, 1884, it was not put at issue by answer until September, 1885, when defendant pleaded a general denial to the claim of plaintiffs; and then assuming the character of plaintiff in reconvention, and claiming to be liquidator of the firm of J. Lemle, dissolution of which was alleged, he sets forth the facts heretofore recited touching the suspensive appeal from the mandamus judgment, and the failure of plaintiffs to prosecute the same; avers that the sale of his goods was the consequence of said appeal; that it resulted in a sacrifice of said goods at a price far below their value in his hands had he not been prevented from releasing the same on bond, occasioning him a loss on that account of $10,100; sets forth other damage to his business, his credit, etc., to a large amount; prays for citation of Sigmund and Herman Meyer, sureties on the suspensive appeal bond; and for judgment against plaintiffs and said sureties *in solido* in the sum of $20,000, the full amount of the bond, and against plaintiffs in the further sum of forty-nine hundred dollars.

Waiving objections to the mode of proceeding, which are serious, we prefer to consider the merits of the reconventional demand, which we shall do under two aspects, viz:

1st. Whether plaintiffs and their sureties are liable for the damages claimed, contractually, under the terms of the bond.

2d. Whether plaintiffs are liable otherwise.

We solve the first question in the negative on two grounds.

1. The condition of the bond is in the following terms:

"Now, therefore, if the said Friedman Brothers (and others, naming them), shall well and truly prosecute their said appeal with effect, and shall satisfy whatever judgment may be rendered against them, or that the same shall be satisfied out of the proceeds of the sale of their estate, real and personal, if they be cast in their said appeal, then this obligation to be null and void, otherwise to be and remain in full force and effect against principal and security."

The failure of plaintiffs to prosecute this appeal placed them in the same position which they would have occupied had their appeal been

prosecuted and resulted in a decree of this Court affirming the judg-- ment. As that judgment was not against them, but was solely against the sheriff, and as the bond did not bind the parties to satisfy any judgment against the sheriff, and as the only judgment which could have been rendered against Friedman Bros., would have been for costs of appeal, it is manifest that, under the terms of this bond, the parties were not bound to satisfy the judgment against the sheriff.

It is possible that, under a reasonable construction of articles 571 and 579 of the Code of Practice, the third person appealing suspen- sively from a judgment against a defendant might be required to con- dition the bond "to satisfy whatever judgment may be rendered against" the *defendant.* But such was not the bond furnished in this case.

As was said in one case, "we must take the bond as it is, not as it might have been or as the court might have ordered it to be made." Cartwright vs. McMillan, 3 Ann. 685.

And in another: "We are not permitted to extend the obligation of the surety beyond what is contained in the bond itself and what the law has declared to be the legal obligation of the surety in such a case, which is to satisfy whatever judgment may be rendered against the ap- pellant." Parham vs. Cobb, 9 Ann. 426.

(See *erratum* at beginning of volume showing that the opinion above quoted from, though styled a dissenting opinion was, on that point, the opinion of the Court.)

A very pertinent and weighty opinion by the Supreme Court of Maryland in a case very analogous is quoted, where the same view is taken. It is there said: "The appellants contend that, by the failure to prosecute the appeal, the condition was broken, the right of action thereupon accrued and that the measure of damages is the loss occa-- sioned by the appeal. If we were at liberty to decide this case accord- ing to principles of equity, etc., we should have little hesitation in assenting to the appellant's views; but the obligation is defined and limited by the terms of the bond and cannot be extended beyond their legal import and effect. ⁂ By the terms of the bond the obligors bound themselves to prosecute the appeal with effect, and in the event of failure to do so, the condition expressly declares what the obligors shall pay." Fullerton vs. Miller, 22 Md. 1.

2. The foregoing might be sufficient on this point; but we may ex-- press, in addition, our serious doubt whether, even if the bond had bound the obligors to satisfy the judgment against the sheriff, the action of the Court in ordering the sale of the property at the demand

of parties other than plaintiff, in the exercise of jurisdictional power and without objection by defendant, would not have been a *vis major* relieving plaintiffs and their sureties from their obligations under such a bond.

Now on the question of the extra-contractual liability of Friedman Bros., the foregoing suggestion is entitled to great weight. But in addition thereto, the attempt of defendant to assimilate the liability of an unsuccessful appellant to that of a plaintiff in a wrongful attachment or other proceeding by conservatory process, cannot be sustained. The differences between them are too marked to escape notice or to need enumeration.

The right of appeal is, as has been frequently said, a constitutional right. Its object is to submit to the appellate tribunal the final determination of controverted rights. The position of the appellant cannot be distinguished from that of the plaintiff in the original suit who seeks to submit the same rights to primary judicial determination. No distinction can be made between the two, except such as the law has expressly made in the bonds required. Outside of those bonds, their cases are identical, and the same conditions must exist in order to subject them to any liability outside of such bonds, viz: malice and want of probable cause.

Those conditions have no existence in this case.

We are satisfied the judgment appealed from enforced the law and awarded justice.

Judgment affirmed.